Samuel SEGAL, Plaintiff,

v.

**PARAMOUNT PICTURES,
et al., Defendants.**

Civ. A. No. 92–3808.

United States District Court,
E.D. Pennsylvania.

Dec. 30, 1993.

Samuel Segal, pro se.

Kell M. Damsgaard, Morgan, Lewis & Bockius, Philadelphia, PA, Leslie Gordon Fagen, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants.

## MEMORANDUM

ROBRENO, District Judge.

Plaintiff brought this action against defendants for alleged copyright infringement under 17 U.S.C. § 501. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338. Defendants have moved for summary judgment. For the reasons set forth below, I will grant defendants' motion.

## I. BACKGROUND

In June 1983, at age 22, plaintiff Samuel Segal ("Segal") submitted a screenplay to an executive at Paramount Pictures Corporation ("Paramount"). Before sending the screenplay to Paramount, Segal had registered his screenplay with the United States Copyright Office. Segal's screenplay, entitled *Star Trek IV: Inside the Klingon Empire,* was based on the popular television and motion picture series *Star Trek* that Paramount had produced since 1966, when the television series premiered. At the time of Segal's submission, Paramount's latest release in the series was the 1982 motion picture sequel, *Star Trek II: The Wrath of Khan.* Segal has never been an employee of Paramount; he has never had any contractual relationship with Paramount; and Paramount has never solicited any submissions from him. Segal, nonetheless, hoped that Paramount would read his screenplay and offer to produce a motion picture based on this script.

Instead, Paramount returned the screenplay to Segal in July 1983, explaining that the studio was in the process of developing its own *Star Trek IV* movie and that Paramount could not consider his screenplay. Paramount subsequently released the third installment of the motion picture series, *Star Trek III: The Search for Spock,* in 1984. In

1986, the studio released *Star Trek IV: The Voyage Home*, followed by *Star Trek V: The Final Frontier* in 1989 and *Star Trek VI: The Undiscovered Country* in 1991.

In 1992, Segal initiated this action, alleging that Paramount's 1991 release of *Star Trek VI: The Undiscovered Country* ("*The Undiscovered Country*") infringed his copyright on the screenplay *Star Trek IV: Inside the Klingon Empire* ("*Inside the Klingon Empire*") which he had submitted to Paramount in 1983. Segal joined four individual defendants in the infringement suit: Leonard Nimoy, a lead actor, executive producer, and developer of *The Undiscovered Country*; Nicholas Meyer, the movie's director and one of its writers and developers; Denny Martin Flinn, one of the movie's writers; and Ralph Winter, a producer of the movie.

## II. DISCUSSION

■■■ In Count I of the Complaint, plaintiff alleges copyright infringement; in Counts II and III he claims unfair competition and unjust enrichment, respectively; and in Count IV he alleges copyright infringement based on a theory of joint work. To prove copyright infringement, plaintiff must show that he owned a copyright on the screenplay of *Inside the Klingon Empire* and that defendants copied his screenplay in producing *The Undiscovered Country*. *See Whelan Assocs. v. Jaslow Dental Lab.*, 797 F.2d 1222, 1231 (3d Cir.1986), *cert. denied*, 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 831 (1987). A claimant may prove copying circumstantially by showing both that the two works at issue are substantially similar and that the allegedly infringing party had access to the allegedly infringed work. *See id.* at 1231–32.

Defendants contend that with respect to plaintiff's claim of copyright infringement, summary judgment against plaintiff is appropriate on two independent grounds. First, defendants argue that plaintiff has failed to present specific facts showing a genuine issue as to whether Segal's *Inside the Klingon*

Empire and Paramount's *The Undiscovered County* are substantially similar. Second, defendants argue that plaintiff has failed to present specific facts showing a genuine issue as to whether the developers and producers of *The Undiscovered Country* had access to *Inside the Klingon Empire*.[1] After reviewing the standard for summary judgment, I shall consider both of defendants' arguments, after which I shall discuss plaintiff's claim of joint work and his pendent state law claims.

### A. *Standard for Summary Judgment.*

■■■ Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). When ruling on a motion for summary judgment, the evidence and inferences drawn from the evidence must be viewed in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 366 (3d Cir.1990). The moving party bears the initial burden of pointing out the absence of genuine issues of material fact, but summary judgment should be granted against a party that fails to show "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").

### B. *Substantial Similarity.*

■■■ Substantial similarity is premised upon two findings. In particular, there must

---

1. Defendants have not based their Motion for Summary Judgment on the invalidity of plaintiff's copyrights, although the Court observes that defendants do not appear to concede validity.

*See* Defendants' Mem. (Doc. No. 28) at 12–13. For purposes of this Motion, the Court accepts as true the validity of these copyrights.

be sufficient similarity between the two works at issue to conclude that the alleged infringer used the copyrighted work in producing the allegedly infringing work. *See Whelan Assocs.*, 797 F.2d at 1232. Second, there must be sufficient intrinsic similarity for an ordinary lay observer to conclude that there has been an unlawful appropriation. *Id.* Based upon the affidavits and other materials properly submitted under Federal Rule of Civil Procedure 56(e),[2] the Court concludes that there is no genuine issue of material fact with respect to either prong of the test for substantial similarity, and that defendants are entitled to judgment as a matter of law.

The evidence before the Court shows that *The Undiscovered Country*, is a work largely comprised of the setting, characters, and action sequences developed over the course of the *Star Trek* television and motion picture series beginning in 1966. *The Undiscovered Country* itself is a science fiction tale of the efforts of the long-warring United Federation of Planets, the Klingon Empire, and various other nations of the universe to change the course of their destructive history of violent confrontation and bring about intergalactic peace. The motion picture was developed and produced in 1990 and 1991, and although the movie is set in the 23rd century, its plot is a metaphor for the end of the Cold War.

 Segal, nonetheless, believes that the story expressed in *The Undiscovered Country* is substantially similar to his screenplay. While the two works at issue do share many of the same characters, as well as a similar setting and certain common action sequences, this is not surprising because, as noted above, these are all features common to the *Star Trek* television and movie series developed over many years since 1966.

Moreover, the existence of some common features in the face of overwhelming differences between the works is insufficient to show substantial similarity. *See Davis v. United Artists, Inc.*, 547 F.Supp. 722, 727 (S.D.N.Y.1982). Further, sequences of events necessarily following from a common theme, or *scenes a faire*, do not establish substantial similarity. *See id.*

Based upon any reading, though, Segal's screenplay *Inside the Klingon Empire* stands in stark contrast to *The Undiscovered Country*. Whereas *The Undiscovered Country* expressed a tale of the efforts of enemy empires to beat swords into plowshares and to forge a fundamentally new relationship founded on peace, *Inside the Klingon Empire* expresses a story of territorial aggrandizement which fuels violent confrontation among the nations. Apropos for the thorough dissimilarity between the two works, *The Undiscovered Country* concludes with the foil of conspirators who had been bent on disrupting the peace process, while *Inside the Klingon Empire* ends on the brink of an all-out war among the empires, precipitated by the escalation of hostilities throughout the story.

In short, the two works constitute opposites of expression. Segal's *Inside the Klingon Empire* expresses beliefs and prejudices regarding an enemy empire and the concomitant need to relate to those "others" through war. *The Undiscovered Country*, on the other hand, expresses a vision of peaceful relations among nations.[3] In its expression of *glasnost* and peace, it may be said that *The Undiscovered Country* boldly went where Segal's screenplay had not gone before. Therefore, there is no genuine issue of material fact with respect to substantial similarity, and defendants are entitled to judgment as a

---

**2.** The Court granted defendants' motion to strike certain portions of plaintiff's memorandum under Federal Rule of Civil Procedure 56(e), and these portions have not been considered in the Court's decision on defendants' motion for summary judgment. However, the Court notes that consideration of the stricken portions would not have altered the Court's conclusion to grant the motion for summary judgment.

**3.** Indeed, when Segal penned his screenplay in 1983, the manifestations of this vision of post-Cold War peaceful relations upon which *The Undiscovered Country* was based remained years away. For example, the actions of one of the key characters in *The Undiscovered Country* appear to be based upon the role that former Soviet President Gorbachev played in the peace process in the late 1980s and early 1990s.

matter of law on Count I.[4]

### C. Access.

■ Independent from defendants' argument that there is no genuine issue that the two works are substantially similar, defendants further contend that there is no genuine issue that the developers and producers of *The Undiscovered Country* had access to Segal's screenplay. Based upon the affidavits and other materials submitted, the Court agrees that there is no genuine issue as to whether those who produced *The Undiscovered Country* had access to Segal's screenplay, and defendants are entitled to judgment as a matter of law.

■ The evidence submitted to the Court shows that in June 1983, Segal's mother and literary-agent Lillian Shain mailed his screenplay *Inside the Klingon Empire* to Laurence Mark, an executive of Paramount. At the time, Mark was a Vice President of Production at Paramount and was not involved with the development of the *Star Trek* series. He did not read, copy, or distribute the screenplay. Instead, in July 1983, in accordance with Paramount policy against consideration of unsolicited scripts, he returned the screenplay to Ms. Shain. Further, no one who developed and produced the screenplay *The Undiscovered Country* ever

possessed Segal's screenplay. On this uncontroverted evidence, there is no genuine issue of material fact that those who produced *The Undiscovered Country* had access to the screenplay *Inside the Klingon Empire*. See *Novak v. NBC*, 752 F.Supp. 164, 169–70 (S.D.N.Y.1990); *Meta–Film Assocs. v. MCA, Inc.*, 586 F.Supp. 1346, 1352–59 (C.D.Cal.1984).[5]

### D. Joint Work.

■ In Count IV of the Complaint, plaintiff alleges copyright infringement under a theory of co-authorship. Under the copyright statute, "[a]uthors of a joint work are coowners of copyright in the work." 17 U.S.C. § 201(a). "Joint work" is defined as "work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. Although intent usually is a question of fact, here the record is devoid of any evidence remotely suggesting defendants' intent to jointly merge the two screenplays at issue. Rather, the uncontroverted evidence shows that Segal's unsolicited screenplay was returned to him in 1983 without review, and that *The Undiscovered Country* was developed and produced in 1990 and 1991 without

---

4. Upon review of the record, the only factual issues suggested in this case seem to be the extent Segal himself copied the work of earlier *Star Trek* television episodes and motion pictures in writing his screenplay. Defendants have not asserted any counterclaim, and the Court need not decide this issue in granting defendants' Motion for Summary Judgment. Nevertheless, recognition of the strikingly similar expressions in Segal's story and in the *Star Trek* television series of the 1960s helps to explain any common features found in *Inside the Klingon Empire* and *The Undiscovered Country*. (*See* Fagen Aff.Ex.B (Segal Dep.Tr.) at 120, 126–30, 135–46. *Compare* Fagen Aff.Ex.P. (*Star Trek: Errand of Mercy*), Fagen Aff.Ex.Q (*Star Trek: Journey to Babel*), *and* Fagen Aff.Ex.R (*Star Trek: Day of the Dove*) *with* Fagen Aff.Ex.F (*Inside the Klingon Empire*).)

5. In the Complaint, Segal alleged that *The Undiscovered Country* infringed two copyrights: the copyright for his 1983 screenplay *Inside the Klingon Empire* as well as the copyright for a short story which he wrote in 1975 and which was included in a collection entitled *The Enterprise*

*Collection*. The short story, *"The Brutal Klingon Empire,"* formed the basis for Segal's later screenplay *Inside the Klingon Empire*. For the reasons set forth with respect to *Inside the Klingon Empire*, there are likewise no genuine issues of material fact as to whether *The Enterprise Collection* is substantially similar to *The Undiscovered Country*, and defendants are entitled to judgment as a matter of law.

Moreover, as discussed above, the mailing of the screenplay *Inside the Klingon Empire* to someone at Paramount in 1983 was insufficient to raise a genuine issue of material fact as to whether the developers and producers of *The Undiscovered Country* had access to Segal's screenplay. *The Enterprise Collection*, on the other hand, was not even sent to Paramount with the screenplay *Inside the Klingon Empire*, and the record before the Court only tends to suggest that the developers and producers of *The Undiscovered Country* never had access to *The Enterprise Collection*. Therefore, as with substantial similarity, there are no genuine issues of material fact concerning access to *The Enterprise Collection*, and defendants are entitled to judgment as a matter of law.

even knowledge of Segal's work, let alone intent to merge it with the motion picture that was produced. Moreover, even if intent was a genuine issue in dispute, there is no genuine issue as to whether Segal made a material contribution to *The Undiscovered Country,* which is a necessary element under a theory of joint work. *See Whelan Assocs. v. Jaslow Dental Lab.,* 609 F.Supp. 1307, 1318–19 (E.D.Pa.1985), *aff'd,* 797 F.2d 1222 (3d Cir.1986), *cert. denied,* 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 831 (1987). Defendants are therefore entitled to judgment as a matter of law on Count IV.

### E. *Pendent State Law Claims.*

■ Finally, in Counts II and III of the Complaint, Segal alleges that defendants are liable to him for unfair competition and unjust enrichment for the alleged infringement of his screenplay. However, federal copyright law pre-empts equivalent state law claims arising from unauthorized reproduction, preparation of derivative works, distribution, or public performance or display. *See* 17 U.S.C. §§ 106, 301(a); *Del Madera Properties v. Rhodes & Gardner, Inc.,* 820 F.2d 973, 976–77 (9th Cir.1987); *Ehat v. Tanner,* 780 F.2d 876, 877–78 (10th Cir.1985), *cert. denied,* 479 U.S. 820, 107 S.Ct. 86, 93 L.Ed.2d 39 (1986); *Klitzner Indus. v. H.K. James & Co.,* 535 F.Supp. 1249, 1258 (E.D.Pa.1982); *see also Pytka v. Van Alen,* Civil Action No. 92–1610, 1992 WL 129632, at *3, 6, 1992 U.S.Dist. LEXIS 7956, at *10, 18, Copyright L.Rep. (CCH) ¶ 26,984 (E.D.Pa. June 5, 1992). Because federal copyright law pre-empts Segal's pendent state law claims of unfair competition and unjust enrichment, defendants are entitled to judgment as a matter of law on Counts II and III.

An appropriate Order follows.

### ORDER

AND NOW, this 30th day of December, 1993, upon consideration of defendants' Motion for Summary Judgment (Document No. 27) and memorandum in support thereof (Document No. 28), and upon consideration of plaintiff's memorandum in opposition thereto (Document No. 29), and upon consideration of defendants' reply memorandum (Document No. 31), and upon further consideration of plaintiff's memorandum in support of his self-styled motion to deny defendants summary judgment (Document No. 24), and for the reasons stated in the Court's accompanying Memorandum, it is hereby **ORDERED** that defendants' Motion for Summary Judgment (Document No. 27) is **GRANTED,** and this case shall be marked **CLOSED.**

AND IT IS SO ORDERED.