Phyllis CHRISTOPHER–KETCHUM,
Plaintiff,

v.

AGWAY ENERGY PRODUCTS and
Agway Petroleum Corporation,
Defendants.

No. 96–CV–1140.

United States District Court,
N.D. New York.

Dec. 30, 1997.

Aswad & Ingraham, Binghamton, NY, for Plaintiff; Thomas A. Saitta, of counsel.

Hiscock & Barclay, Syracuse, NY, for Defendants; J. Eric Charlton, of counsel.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

### I. BACKGROUND

This case concerns allegations of sex discrimination and sexual harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–2 et seq. Presently before the Court is Defendants' Motion for Summary Judgment. For the reasons stated below, the Court will grant Defendants' motion.

Plaintiff Phyllis Christopher–Ketchum was employed at defendant Agway Energy Products, a division of defendant Agway Petroleum Corporation (collectively referred to as "Agway"), until July, 1995. Plaintiff began her employment with Defendants at the Agway Petroleum plant in Whitney Point, New York in July, 1971. In October, 1983, Plaintiff was promoted to plant manager at the Whitney Point facility. Almost ten years later, in September, 1993, Plaintiff was promoted to Customer Finance Supervisor at Agway's offices in Syracuse, New York. Plaintiff's promotion to Customer Finance Supervisor was part of an initiative undertaken by Agway to transfer consumer credit functions from Agway's individual plants to a centralized office in Syracuse.

On January 4, 1994, Plaintiff was again promoted, this time to Consumer Credit Manager. This promotion resulted in Plaintiff moving from a Level 5 to a Level 6 pay grade and made her responsible for recruiting, interviewing, training, and supervising 24 specialists and two managers at the Syracuse center, as a well as coordinating, implementing, and training various regional and plant managers in her area.

Plaintiff's ascendency within Agway ended on August 19, 1994, when John Hamilton, Vice–President of Distribution, informed Plaintiff that she would no longer be the Consumer Credit Manager. Plaintiff claims that Hamilton put Kevin Williams in her job as Consumer Credit Manager because she is a woman. Defendants state, however, that

Williams did not replace Plaintiff, but instead replaced Plaintiff's supervisor, Mark Lesney.

Plaintiff bases her claim of sex discrimination on the following statements by Agway managers. According to Plaintiff, on being informed of her demotion she asked Hamilton about the change and "she was informed that such removal did not involve a structural or performance issue, but a cultural issue." (Plf's Aff. ¶ 14). Plaintiff argues that Hamilton's use of the term "cultural," was a reference to Plaintiff's sex. On August 16, 1994, Plaintiff met with Mark Lesney and states: "I asked him why Kevin [Williams] was replacing me as Consumer Credit Manager. He indicated that it was because John Hamilton believed that Kevin could do my job better because he was a male." (Plf's Aff. ¶ 15). Plaintiff then asserts that she spoke to Kevin Williams who told her that "John Hamilton had a problem with my 'outspoken honesty' and stated that 'John does not want the truth always from a man, much less a woman.'" (Plf's Aff. ¶ 16).

Defendants argue that Plaintiff's allegations are unsupported hearsay and that Plaintiff's reduced job responsibilities were the result of the reorganization of her department. Defendants state that "culture" referred to the philosophy and tenor of the organization; and that Hamilton used the term in reference to the problems Agway was experiencing in shifting local credit management from the individual plants to a central credit office. (Hamilton Dep. at 49–50; McGraw Dep. at 86). Agway also asserts that the changes were in response to strong employee resistance to the consolidation of the credit functions and that some region and plant managers complained that Plaintiff was inflexible in dealing with them. (Hamilton Dep. at 58–60; Williams Dep. at 47).

According to Plaintiff, in September, 1994, she began performing the duties of Western Division Specialist Manager reporting to Kevin Williams. However, in April, 1995, Alan Lincoln replaced Williams as Plaintiff's supervisor. Plaintiff claims that Lincoln then engaged in a continuous campaign of harassment in order to force her to resign from her position. Specifically, Plaintiff states, *inter alia*, that "Alan Lincoln repeatedly and intentionally mischaracterized my comments as being negative statements about the company or evidence of my unwillingness to work with others in the company"; "Lincoln incorrectly indicated that I had expressed dissatisfaction with my present position"; and that Lincoln "falsely indicated that I had difficulty accepting [his] hiring approach [and] incorrectly claims that I was frustrated with my present level of authority and his management style." (Plf's Aff. ¶ 22).

On May 22, 1995, Plaintiff learned that there was an opening for the plant manager's position in Newark Valley, New York. Prior to that time, Plaintiff states that she told John Hamilton and Alan Lincoln that she was interested in a plant manager's job. On the day she learned of the Newark Valley position, Plaintiff again told Lincoln of her interest in the job. According to Plaintiff, "[i]n response to my statement, he informed me that I had burned some bridges in Syracuse. When I asked him what he meant, he pointed to John Hamilton's office." (Plf's Aff. ¶ 28).

After Plaintiff did not get the position, she discovered that Joe McGraw, the Human Resources Director, had not put her on the list of candidates. According to Plaintiff, when she met with McGraw on June 2, 1995, she was told that "I was not considered for the Newark Valley position because of problems interacting with others in the company. However, when asked to do so, they could not provide specifics of such problems." (Plf's Aff. ¶ 37).

## II. DISCUSSION

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary judgment if it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). It is the substantive law that will determine what facts are material to the outcome of a case. *See Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

Initially, the moving party has the burden of informing the court of the basis of its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The Court must then resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). However, the non-moving party must do more than simply show "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. Only when the Court concludes that no rational finder of fact can find in favor of the non-moving party should summary judgment be granted. *Gallo v. Prudential Residential, Servs., Ltd.*, 22 F.3d 1219, 1223 (2d Cir.1994).

## A. Sexual Discrimination

 Initially, the Court notes that although summary judgment is no longer a disfavored process for the elimination of groundless claims, *see Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552 (summary judgment favored to dispose of meritless claims), a district court should be wary of granting summary judgment in a discrimination case because the device is generally inappropriate where, as is typical, an employer's state of mind is relevant. *Gallo*, 22 F.3d at 1224. This is not to say that summary judgment is wholly inappropriate; rather, as the Second Circuit has noted, "the summary judgment rule would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion. [T]he purposes of summary judgment ... apply no less to discrimination cases than to ... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985). Considering the relative ease of bringing a suit alleging discrimination and the difficulty and expense of defending against such a suit, courts correctly find summary judgment proper where allegations of discriminatory intent are merely conclusory.

 Title VII protects against, among other things, disparate treatment of employees due to sexual discrimination. An employer consequently is prohibited from discharging or otherwise discriminating against an individual on the basis of sex. *See* 42 U.S.C. § 2000e–2(a). A plaintiff claiming sexual discrimination can proceed under either of two theories: *quid pro quo* discrimination or hostile work environment harassment. *See Karibian v. Columbia Univ.*, 14 F.3d 773, 777 (2d Cir.1994). To establish a claim of *quid pro quo* discrimination, Plaintiff must show "that she was denied an economic benefit either because of gender or because a sexual advance was made by a supervisor and rejected by her." *Kotcher v. Rosa and Sullivan Appliance Ctr.*, 957 F.2d 59, 62 (2d Cir. 1992).

Plaintiff's claim that Defendants violated Title VII by intentionally discriminating against her on the basis of her sex requires the Court to apply the three-step burden shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801–03, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). *See Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 129 (2d Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997). Under this analysis, Plaintiff must first demonstrate a *prima facie* case of discrimination by a preponderance of evidence. *McDonnell Douglas*, 411 U.S. at 801–03, 93 S.Ct. at 1824. After Plaintiff establishes a *prima facie* case, the burden shifts to Agway to articulate legitimate, non-discriminatory reasons for its alleged actions. *See Gallo*, 22 F.3d at 1226. If Defendants satisfy this burden, Plaintiff must then prove that the employer's reason was merely a pretext for discrimination, *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 513–15, 113 S.Ct. 2742, 2751–52, 125 L.Ed.2d 407 (1993), and that her sex "played a motivating role in, or contributed to, the employer's decision." *Renz v. Grey Advertising, Inc.*, 135 F.3d 217, 222 (2d Cir.1997).

In order to establish a *prima facie* case of sex discrimination under Title VII, a plaintiff must show that "she was treated less favorably than comparable male employees in cir-

cumstance from which a gender-based motive could be inferred." *See Montana v. First Fed. Sav. & Loan Ass'n,* 869 F.2d 100, 106 (2d Cir.1989). For purposes of this motion, the Court will assume *arguendo* that Plaintiff has established her prima facie discrimination claim.

### i. Defendants' Non–Discriminatory Reasons

■ Establishment of the *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). In order to rebut this presumption, the employer has the burden of producing evidence that the challenged action was taken for a legitimate, nondiscriminatory reason. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. The defendant, however, "need not persuade the court that it was actually motivated by the proffered reasons." *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094 (*citing Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 25, 99 S.Ct. 295, 296, 58 L.Ed.2d 216 (1978)). As the Supreme Court stated in *Texas Dep't of Community Affairs v. Burdine:*

> It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted.

*Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094–95.

■ Here, Defendants argue that Plaintiff's reduced job responsibilities were the result of the reorganization of her department. Defendants state that "culture" referred to the philosophy and tenor of the organization; and that Hamilton used the term in reference to the problems Agway was experiencing in shifting local credit management from the individual plants to a central credit office. (Hamilton Dep. at 49–50; McGraw Dep. at 86). Agway also states that the changes were in response to strong employee resistance to the consolidation of the credit functions and that some region and plant managers complained that Plaintiff was inflexible in dealing with them. (Hamilton Dep. at 58–60; Williams Dep. at 47).

As to Defendants' reasons for not allowing Plaintiff to transfer to Newark Valley, Joe McGraw stated that he would not consider an employee for a relocation when the employee was dealing with unresolved issues between the employee and his or her supervisor. (McGraw Dep. 67, 103–104, 112). McGraw also stated that because Plaintiff was the most experienced management person in Central Credit, it did not make good business sense to remove her from Central Credit and place her into a position that was typically used for management *training.* (McGraw Dep. at 112).

As stated earlier, Agway need not persuade the Court that it was actually motivated by the proffered reason, it need only produce evidence that it acted based on a legitimate, nondiscriminatory reason. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. In this circuit, "[a]ny legitimate, non-discriminatory reason will rebut the presumption triggered by the *prima facie* case." *Fisher v. Vassar College,* 114 F.3d 1332, 1336 (2d Cir. 1997). Furthermore, "courts must refrain from intruding into an employer's policy apparatus or second-guessing a business's decision-making process" *Meiri,* 759 F.2d at 995.

Accordingly, the Court finds that the proffered reasons given by Agway for its decision to demote Plaintiff and its decision not to transfer her were based on legitimate, nondiscriminatory reasons. Agway has thus successfully rebutted Plaintiff's presumption of discrimination.

The burden now falls back on Plaintiff to show that the proffered reasons are mere pretext, and that her sex played a motivating role in, or contributed to, the employer's decision.

### ii. Pretext and Unlawful Discrimination.

■ If the employer has articulated a legitimate nondiscriminatory reason for the

termination, the plaintiff must then present evidence establishing intentional discrimination. *Saint Mary's Honor Ctr.,* 509 U.S. at 513–17, 113 S.Ct. at 2751–52. Therefore, Plaintiff's burden is enlarged to include every element of the claim; discrimination and cause are no longer presumed. *Fisher,* 114 F.3d at 1337.

■ Here, Plaintiff's allegations of sex discrimination are exceedingly weak. According to Plaintiff, on being informed of her demotion she asked Hamilton about the change and "she was informed that such removal did not involve a structural or performance issue, but a cultural issue." (Plf's Aff. ¶ 14). Plaintiff argues that Hamilton's use of the term "cultural," was a reference to Plaintiff's sex. When Plaintiff met with Mark Lesney, she states: "I asked him why Kevin [Williams] was replacing me as Consumer Credit Manager. He indicated that it was because John Hamilton believed that Kevin could do my job better because he was a male." (Plf's Aff. ¶ 15).[1] Plaintiff then asserts that she spoke to Kevin Williams who told her that "John Hamilton had a problem with my 'outspoken honesty' and stated that 'John does not want the truth always from a man, much less a woman.'" (Plf's Aff. ¶ 16). On the day she learned of the Newark Valley position, Plaintiff told Lincoln of her interest in the job. According to Plaintiff, "[i]n response to my statement, he informed me that I had burned some bridges in Syracuse. When I asked him what he meant, he pointed to John Hamilton's office." (Plf's Aff. ¶ 28). When Plaintiff met with McGraw on June 2, 1995, she was told that "I was not considered for the Newark Valley position because of problems interacting with others in the company. However, when asked to do so, they could not provide specifics of such problems." (Plf's Aff. ¶ 37).

Plaintiff does not offer any direct evidence in support of her claim that Agway's proffered reasons were merely pretext, nor does she offer any admissible circumstantial evidence of pretext. First, Plaintiff has not shown that Defendant's use of the term "cultural" had anything to do with her sex. John Hamilton stated in his deposition:

Q. Do you recall ever using the term "cultural" in relation to the changes that took place in August of '94 with respect to Phyllis' position?

A. Not with respect to Phyllis' position.

Q. Okay. With respect to something else?

A. The cultural change that we were going through was that credit had always been done in the field. 97 bulk plants had always done their credit. We were trying to transition that to a centralized function that was highly computerized and make that interface invisible to the customer.

People in the field struggled with that because they saw that as a reduction of their responsibilities and knew that it would ultimately impact head count, job security, so there was very much a cultural issue going on of trying to have them understand why we were [going] through the use of hand-held computers and automated technology on credit and other things. We were making the transition to keep our costs low and be competitive.

(Hamilton Dep. at 49–50). Other than her own conclusory statement to the contrary, Plaintiff offers no evidence supporting her interpretation of Defendants' use of the term "cultural."

Second, Plaintiff's remaining evidence on the issue of Agway's motivation consists of statements to her by persons who are expressing opinions as to a third person's motivation, or relating double hearsay. It is well settled that affidavits of persons without personal knowledge of the facts, inadmissible hearsay statements, and conclusory allegations are not sufficient to defeat a properly supported summary judgment motion. *See, e.g.,* Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (stating that conclusory affidavits are not sufficient to withstand summary judgment); *H. Sand & Co. v. Airtemp Corp.,* 934 F.2d 450, 454–55 (2d Cir.1991) (requiring personal knowledge); *Davis v. United Artists, Inc.,* 547 F.Supp. 722, 728

---

1. Plaintiff did not submit deposition testimony or an affidavit from Mark Lesney.

(S.D.N.Y.1982) (disallowing multiple hearsay statements).

Moreover, even assuming that Plaintiff could overcome her lack of personal knowledge of the alleged statements by Agway personnel, her affidavit nevertheless fails to allege that Agway's actions were motivated by Plaintiff's sex. There is simply no evidence of any nexus.

After an examination of the entire record, there is nothing to indicate that Agway's proffered reasons for its actions were anything but truthful. Accordingly, Plaintiff has not met her burden in showing that a triable issue of fact exists as to whether Agway's proffered reasons for her termination were merely pretext and that her sex played a motivating role in, or contributed to, Agway's actions. For this reason, Plaintiff's discriminatory termination claim must be dismissed.

### B. Sexual Harassment

■ To establish a claim for hostile work environment sexual harassment Plaintiff must show: "(1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 249 (2d Cir.1995).

As to the first prong of this test, "[a]ctionable sexual harassment must consist of more than isolated incidents or casual comments that express harassment or hostility." *Babcock v. Frank*, 783 F.Supp. 800, 808 (S.D.N.Y.1992). Moreover, "[t]he harassment at issue must be 'sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.'" *Kotcher*, 957 F.2d at 63 (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986)). In this regard, "the incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief." *Kotcher*, 957 F.2d at 63. As the Supreme Court held in *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the employee must subjectively perceive the environment to be abusive, and the environment must be one that a reasonable person would find hostile or abusive. 510 U.S. at 22, 114 S.Ct. at 370–71.

■ According to Plaintiff, Alan Lincoln engaged in a continuous campaign of harassment in order to force her to resign from her position. Specifically, Plaintiff states, *inter alia*, that "Alan Lincoln repeatedly and intentionally mischaracterized my comments as being negative statements about the company or evidence of my unwillingness to work with others in the company"; "Lincoln incorrectly indicated that I had expressed dissatisfaction with my present position"; and that Lincoln "falsely indicated that I had difficulty accepting [his] hiring approach [and] incorrectly claims that I was frustrated with my present level of authority and his management style." (Plf's Aff. ¶ 22).

After reviewing Plaintiff's allegations and her supporting evidence, the Court must conclude that she has not demonstrated a genuine issue of material fact sufficient to withstand summary judgment. First, as stated in the previous section, Plaintiff's allegations of *sexual* conduct on the part of Defendants are exceedingly weak. Second, although Agway may have engaged in conduct that upset Plaintiff, behavior that is immature, nasty, or annoying, without more, is not actionable as sexual harassment. *See, e.g., Porras v. Montefiore Medical Center*, 742 F.Supp. 120, 127 (S.D.N.Y.1990) ("Unfair, overbearing, or annoying treatment of an employee, standing alone, cannot constitute a Title VII sex discrimination claim."); *Christoforou v. Ryder Truck Rental, Inc.*, 668 F.Supp. 294, 303 (S.D.N.Y.1987).

Moreover, courts in this circuit have found allegations more severe and pervasive than those alleged here insufficient to create hostile environment sexual harassment. *See, e.g., Johnson v. Tower Air, Inc.*, 149 F.R.D. 461, 470 (E.D.N.Y.1993) (supervisor's sitting on plaintiff's desk, using her telephone, and casually touching her over 1 1/2 years, in addition to placing his hand on plaintiff's thigh, insufficient to state a claim); *Fair v. Guiding Eyes for the Blind, Inc.*, 742 F.Supp. 151, 155–56 (S.D.N.Y.1990) (supervi-

sor's repeated and uninvited conversations on sexual matters over four-month period); *Trotta v. Mobil Oil Corp.*, 788 F.Supp. 1336, 1342, 1350 (S.D.N.Y.1992) (strippers and offensive slides at company-sponsored functions and comments over extended period of time not sufficient for *prima facie* case of hostile environment discrimination).

Accordingly, Plaintiff's sexual harassment claim must also be dismissed.

### C. Constructive Discharge

A constructive discharge occurs when the employer deliberately makes an employee's working conditions so intolerable that the employee is forced to resign. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir.1987). However, a constructive discharge claim "must be dismissed as a matter of law unless the evidence is sufficient to permit a rational trier of fact to infer that the employer deliberately created working conditions that were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 361 (2d Cir.1993) (internal quotation omitted). It is insufficient that the employee's working conditions were merely difficult or unpleasant. *Id.* at 360. Moreover, "there is a growing body of case law to the effect that '[t]o prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment.'" *Shull v. Rite Aid Corp.*, 1997 WL 289460, at *7 (S.D.N.Y. May 30, 1997) (*quoting Landgraf v. USI Film Products*, 968 F.2d 427, 430 (5th Cir.1992), *aff'd*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)).

Although Plaintiff's treatment may have been unpleasant, it was not significantly offensive and is insufficient to support a finding of constructive discharge. Therefore, Plaintiff has not demonstrated the existence of a genuine issue of material fact as to her constructive discharge claim.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANT-ED. Plaintiff's Complaint is DISMISSED in its entirety.

**IT IS SO ORDERED.**