**THE BRIDGEMAN ART LIBRARY, LTD., Plaintiff,**

v.

**COREL CORPORATION, et ano., Defendants.**

**No. 97 Civ. 6232(LAK).**

United States District Court, S.D. New York.

Nov. 13, 1998.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff The Bridgeman Art Library, Ltd. ("Bridgeman") claims to have exclusive rights in photographic transparencies of a substantial number of well known works of art located in museums around the world and to have transformed those transparencies into digital images in which it also claims exclusive rights. It contends that defendant Corel Corporation ("Corel") is marketing in the United States and abroad compact disks containing digital images of a significant number of the same works of art which, Bridgeman claims, must have been copied from its transparencies and that Corel thus is infringing its copyrights in the United States, the United Kingdom and Canada. It claims as well that Corel's actions violated Sections 32(1) and 43(a) of the Lanham Act and are actionable at common law.[1] The matter now is before the Court on Corel's motion for summary judgment dismissing the complaint and Bridgeman's cross-motion for partial summary judgment.

*Facts*

*Bridgeman*

Bridgeman is an English company which has an office in New York.[2] It is in the business of acquiring rights to market reproductions of public domain works of art owned by museums and other collections [3] which it obtains either from the owners of the underlying works of art or freelance photographers it hires.[4] Bridgeman maintains a library of those reproductions in the form of large format color transparencies and digital files.[5] Additionally, Bridgeman attaches a color correction strip to each transparency to ensure that the image is a genuine reflection of the

Stephen A. Weingrad, Weingrad & Weingrad, New York City, for Plaintiff.

Kathryn J. Fritz, Fenwick & West LLP, Ira G. Greenberg, Edwards & Angell, LLP, New York City, for Defendants.

1. The amended complaint for the first time added Off the Wall, Inc. ("OWI"), allegedly a dissolved California corporation, as a defendant. Sec. Am.Cpt. ¶ 4. OWI never was served. The action has been dismissed as against it pursuant to FED R.CIV.P. 4(m).

2. Eichel Dep. at 3.

3. Pooley Dep. at 16.

4. Bridgeman Dep. at 23. The photographer attests that the photograph was authorized and that he or she has a copyright in the photograph and then assigns the copyright to Bridgeman. *Id.* at 23, 56.

5. Pooley Dep. at 16.

original work as it existed in the circumstances in which it was photographed.[6]

Bridgeman distributes its images as transparencies and as digital files on CD–ROM. The high resolution transparencies are made available to clients through licensing arrangements,[7] while the low resolution CD–ROM images generally are provided to Bridgeman's clients without charge as a digital catalog of available transparencies.[8]

*Corel*

Corel is a Canadian corporation engaged chiefly in the creation and marketing of computer software products. Among Corel's products is a set of seven CD–ROMs known as "Corel Professional Photos CD–ROM Masters I–VII" ("Masters CD–ROM").[9] This product contains seven hundred digital reproductions of well known paintings by European masters. Corel maintains that it obtained the images for its Masters CD–ROM from 35 millimeter slides owned by OWI.[10] Corel claims that it was told that the slides were created from lithograph images owned by OWI's president, Richard Friedman.[11]

*Bridgeman's Claim*

Bridgeman here claims that Corel has infringed its rights in approximately 120 of its images. Its theory is that (1) the owners of the underlying works of art, all of which it concedes are in the public domain, strictly limit access to those works, (2) Bridgeman's transparencies of those works, from which it prepared its digital images and presumably other reproductions, are "the only authorized transparencies of some of these works of

art," [12] and (3) "[b]y inference and logical conclusion, the images in Corel's CD–ROMs must be copies of Bridgeman's transparencies because they have not proved legal [sic] source." [13] The alleged infringements are said to have occurred in the United States, Canada and Great Britain.

Bridgeman contends that it enjoys copyright in the allegedly infringed transparencies on a number of theories. First, in 1997, after the dispute with Corel arose, Bridgeman obtained from the Register of Copyrights a certificate of registration for a derivative work entitled Old World Masters I, which consists of digital images and transparencies of all or substantially all of the reproductions allegedly infringed by Corel.[14] Second, it contends that its transparencies enjoy copyright protection under the laws of the United Kingdom and Canada as well as the Convention for the Protection of Literary and Artistic Works, popularly known as the Berne Convention.

*Discussion*

I. *Summary Judgment*

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.[15] While the burden rests on the moving party to demonstrate the absence of a genuine issue of material fact [16] and the Court must view the facts in the light most favorable to the non-moving party,[17] a defendant may prevail if it can demonstrate that the plaintiff cannot establish an essential element of its claim.[18]

---

6. Eichel Dep. at 29, 30.

7. Bridgeman Dep. at 45.

8. Eichel Dep. at 35–36. These CD–ROMs are not for sale in the United States, though they are sold in the United Kingdom. *Id.* at 36.

9. Smyth Dep. at 2.

10. *Id.* at 2–3.

11. *Id.* at 3.

12. Plaintiff's Memorandum 5 (hereinafter "Pl. Mem.").

13. *Id.*

14. Am.Cpt.Ex. C.

15. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

16. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

17. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

18. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## II. The Copyright Claim

### United States Infringement

■ To establish copyright infringement under the Copyright Act of 1976,[19] a plaintiff must establish ownership of a valid copyright and copying.[20] Corel contests both elements, alleging that Bridgeman has no valid copyright in its images and, in the alternative, that there is no evidence of copying. The Court therefore addresses each element in turn. A threshold matter, however, is the applicable choice of law for these questions.

### 1. Choice of Law

■ Bridgeman argues that its rights are to be determined entirely under British law on the theory that the copying and initial infringement occurred in England.[21] The matter is not quite that simple. In view of the United States' accession to the Berne Convention[22] and the Universal Copyright Convention ("UCC"),[23] a foreign national such as Bridgeman may seek copyright protection under the Copyright Act although the source of its rights lies abroad.[24] The Nimmers suggest that, under the Berne Convention's principle of national treatment, the law of the country of the alleged infringement controls.[25] The Second Circuit disagrees. The Circuit recently held that the principle of national treatment does not express any choice of law rule. It "simply requires that the country in which protection is claimed must treat foreign and domestic authors alike."[26]

The next question, of course, is how to choose the applicable law. *Itar–Tass* says that the Berne Convention itself cannot be the source of law because it is not self-executing.[27] And since the Copyright Act has no choice of law provision, the matter is left to federal common law.[28] In consequence, the applicable law is not necessarily the same for each element of the copyright claim.[29] The Court therefore must determine which law governs copyrightability and the alleged infringements.

■ As copyright is a form of property, the Court determines the interests of the parties based on "the law of the state with 'the most significant relationship' to the property and the parties."[30] According to *Itar–Tass*, relevant factors include the nationality of the authors, the place of initial publication, and the country of origin as determined under the Berne Convention.[31]

**19.** 17 U.S.C. §§ 1–702 (1998).

**20.** *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Repp v. Webber*, 132 F.3d 882, 888 (2d Cir.1997). As a threshold matter, the protections of the Copyright Act generally extend only to registered copyrights. 17 U.S.C. § 411(a). That same section, however, exempts from the registration requirement Berne Convention works the origin of which is outside the United States. *Id.* Since the origin of Bridgeman's works was Great Britain, *see infra*, registration is not required here.

**21.** Plaintiff's Memorandum Opposing Judgment on the Pleadings 37–40 (hereinafter "Pl. 12(b)(6) Mem.").

**22.** Sept. 9, 1986, 25 U.S.T. 1341.

**23.** Sept. 6, 1952, 6 U.S.T. 2732.

**24.** UCC, Art. II ¶ 1 (Paris Text July 24, 1971); Berne Convention, Art. 2 ¶ 6, Art. 5 ¶ 1 (Paris Text July 24, 1971).

**25.** 4 MELVILLE B. NIMMER AND DAVID NIMMER, NIMMER ON COPYRIGHT § 17.05, at 17–37 (1997) (hereinafter NIMMER). *Accord, e.g., Subafilms, Ltd. v. MGM–Pathe Comm. Co.*, 24 F.3d 1088, 1097 (9th Cir.) (*en banc*), *cert. denied*, 513 U.S. 1001, 115 S.Ct. 512, 130 L.Ed.2d 419 (1994).

**26.** *Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 90 & n. 8 (2d Cir.1998).

**27.** *Id.* (citing Berne Convention Implementation Act of 1988, Pub.L. 100–568, §§ 4(a)(3), 2(2), 3(a)(2), 102 Stat. 2853–54 (1988), (hereinafter "BCIA")).

**28.** *Itar–Tass*, 153 F.3d at 90.

**29.** *Id.* (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 222 (1971)).

**30.** *Id.*

**31.** *Id.* at 90. The Berne Convention defines the country of origin of a particular work as the country in which the work first was published. Berne Convention Art. 5 ¶ 4. Published works are "works published with the consent of their authors, whatever may be the means of manufacture of the copies." *Id.* at Art. 3 ¶ 3. The circuit noted that the law of the country of origin will not always control.

■ At issue here are nearly 120 photographs produced either by the museums owning the original works of art or by freelance photographers employed by Bridgeman, which is based in the United Kingdom. Many of the underlying works are in Britain.[32] Bridgeman claims to own any literary property in all the photographs although the record arguably supports the view that Bridgeman in some instances is merely an exclusive licensing and sales agent for reproductions owned by the museums that own the original works of art.[33] In any case, however, the photographs first were published in the United Kingdom. In these circumstances, the Court concludes that the United Kingdom has the most significant relationship to the issue of copyrightability.

■ The applicable law for the second element of the copyright claim is simply that of the infringement situs.[34] Thus, whether an infringement has occurred in the United States is a matter of United States law.

2. Copyrightability

■ For the reasons discussed above, whether copyright subsists in Bridgeman's transparencies is a question of United Kingdom law. The result depends upon the Copyright, Designs and Patents Act 1988 (the "UK Act") which renders "*original* literary, dramatic, musical or artistic works" copyrightable.[35] To be original, a work "need not be original or novel in form, but it must originate with the author and not be copied from another work."[36] That is not to say that the author, in all circumstances, must create the entire work from scratch to be accorded copyright protection. "Protection of a derivative work turns on whether the [author's] skill, judgment and labour transforms the underlying work in a relevant way."[37] That is, the originality requirement is not met where the work in question "is wholly copied from an existing work, without any significant addition, alteration, transformation, or combination with other material."[38]

This principle is exemplified in the Privy Council's oft quoted observation that although:

"[i]t takes great skill, judgment and labour to produce a good copy by painting or to produce an enlarged photograph from a positive print, . . . no one would reasonably contend that the copy painting or enlargement was an 'original' artistic work in which the copier is entitled to claim copyright. Skill, labor or judgment merely in the process of copying cannot confer originality. . . . There must in addition be some element of material alteration or embellishment which suffices to make the totality of the work an original work."[39]

In light of the originality requirement, Bridgeman's images are not copyrightable under the UK Act. It is uncontested that Bridgeman's images are substantially exact reproductions of public domain works, albeit in a different medium. The images were copied from the underlying works without any avoidable addition, alteration or transformation. Indeed, Bridgeman strives to reproduce precisely those works of art.

Bridgeman, nevertheless, claims that its works are original. It argues first that the variation in medium establishes sufficient variation from the underlying works to support originality.[40] The Court is unpersuad-

---

32. Over 50 of the underlying works are in the United Kingdom. Fewer than 20 are in each of Italy and France. The remainder are scattered among at least nine countries.

33. Pl. 56.1 St. ¶ 19.

34. *Itar–Tass*, 153 F.3d at 91 (citing *Lauritzen v. Larsen*, 345 U.S. 571, 583, 73 S.Ct. 921, 97 L.Ed. 1254 (1953)).

35. The Copyright, Designs and Patents Act, 1988, ch. 1, § 1(1)(UK) (emphasis added).

36. *Interlego AG v. Tyco Industries Inc.*, 25 R.I. 652, 57 A. 867, 1 A.C. 217 (P.C.1989), 3 All E.R. 949, 970 (1988) (appeal taken from Hong Kong).

37. 2 MELVILLE B. NIMMER AND PAUL E. GELLER, INTERNATIONAL COPYRIGHT LAW & PRACTICE § 2[3][b], at UK–28 (1998) (citations omitted), (hereinafter "INTERNATIONAL COPYRIGHT LAW").

38. *Id.*, § 2[1][b][ii] at UK–19.

39. *Interlego*, 3 All E.R. at 971–72.

40. Pl. 12(b)(6) Mem. at 8.

ed. " '[T]he mere reproduction of a work of art in a different medium should not constitute the required originality for the reason that no one can claim to have independently evolved any particular medium.' "[41] As discussed above, the law requires "some element of material alteration or embellishment" to the totality of the work. At bottom, the totality of the work is the image itself, and Bridgeman admittedly seeks to duplicate exactly the images of the underlying works.

Plaintiff next argues that its images are original because of the attached color correction bars.[42] The Court, however, need not decide whether Bridgeman's images are copyrightable to the extent of this feature. As indicated below, even if the images with color bars attached are copyrightable, they may be infringed only by reproduction of Bridgeman's unique variation, the color bars. As Corel's images do not include correction strips, their significance for copyrightability is academic in this case.

Finally, plaintiff argues that photography requires artistic talent and originality and therefore would have the Court conclude that its transparencies—photographs of underlying works of art—are original.[43] To be sure, much, perhaps almost all, photography is sufficiently original to be subject to copyright. Certainly anyone who has seen any of the great pieces of photography—for example, Alfred Eisenstadt's classic image of a thrilled sailor exuberantly kissing a woman in Times Square on V–J Day, the stirring photograph of U.S. Marines raising the American flag atop Mount Surabachi on Iwo Jima, Ansel Adams' work and the portraits of Yousuf Karsh[44]—must acknowledge that photographic images of actual people, places and events may be as creative and deserving of protection as purely fanciful creations. But one need not deny the creativity inherent in the art of photography to recognize that a photograph which is no more than a copy of the work of another as exact as science and technology permit lacks originality. That is not to say such a feat is trivial, simply not original. The more persuasive analogy is that of a photocopier. Surely designing the technology to produce exact reproductions of documents required much engineering talent, but that does not make the reproductions copyrightable. As the Privy Council said in *Interlego,* "[s]kill, labour or judgment merely in the process of copying cannot confer originality."[45]

"[T]here has been no independent creation, no distinguishable variation from preexisting works, nothing recognizably the author's own contribution" that sets Bridgeman's reproductions apart from the images of the famous works it copied.[46] Consequently, Bridgeman's images lack sufficient originality to be copyrightable under the UK A47.47.tt/ct.[47]

**41.** *L. Batlin & Son, Inc. v. Snyder,* 536 F.2d 486, 491 (2d Cir .) (*en banc* ) (quoting 1 M. NIMMER, THE LAW OF COPYRIGHT § 10.2, at 94) (1975), *cert. denied,* 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976).

United States law is persuasive in construing English law for two reasons. First, there is substantial similarity between the originality requirements of the UK Act and the Copyright Act. As does the U.K. Act, the Copyright Act extends protection only to "original works of authorship." 17 U.S.C. § 102(a) (1998). A work is original if it owes its creation to the author and was not merely copied. *Feist Publications,* 499 U.S. at 345, 111 S.Ct. 1282. With respect to derivative works, the originality requirement warrants that there be a distinguishable variation between the work in which copyright is sought and the underlying work. *Batlin,* 536 F.2d at 490–91; *Matthew Bender & Co. Inc. v. West Publishing Inc.,* No. 97–7910, 158 F.3d 674, 1998 WL 764837, at *6–*9 (2d Cir.1998). Important to this calculus is that the demonstration of some physical, as opposed to artistic, skill does not constitute a "distinguishable variation." *Dur-*

*ham Industries, Inc. v. Tomy Corp.,* 630 F.2d 905, 910 (2d Cir.1980) (citing *Batlin,* 536 F.2d at 491).

Second, the Privy Council itself has looked to American law as persuasive authority with respect to copyright originality. *See Interlego,* 3 All ER at 969 (quoting Story, J.).

**42.** Pl. Mem. at 14.

**43.** Tr. at 24–26.

**44.** E.g., portrait of Sir Winston Churchill in YOUSUF KARSH, FACES OF OUR TIME 37 (1971).

**45.** *Interlego,* 3 All ER at 971.

**46.** *Durham Industries, Inc. v. Tomy Corp.,* 630 F.2d 905, 910 (2d Cir.1980).

**47.** For the reasons discussed *supra,* footnote 41, the Court would reach the same result under United States law.

### 3. Proof of Copying

■ Even if its images were copyrightable, Bridgeman could not make out its claim because it has raised no genuine issue of fact as to infringement. To prove infringement, Bridgeman must prove that Corel actually copied its images and that "the copying is illegal because a substantial similarity exits between the defendant's work and the protectible elements of the plaintiff's work." [48]

As direct proof is understandably difficult to acquire, copying generally is established by a showing of access by the defendant and of similarities between the accused and accusing works that are probative of copying.[49] There is substantial doubt as to whether plaintiff has made out even a *prima facie* case of access [50] and reason to doubt also the similarity of the low resolution Corel CD's and Bridgeman's high resolution transparencies,[51] both of which bear on whether there is enough evidence of copying to withstand defendant's motion. In view of the Court's conclusion as to substantial similarity, however, it need not resolve these issues. In the case of derivative works such as Bridgeman's images, copyright protection extends,[52] and the similarity to be weighed in determining infringement pertains, only to the original elements contributed by the author.[53] Thus, assuming *arguendo* that Bridgeman holds a copyright in its images, similarity would be judged only with respect to those elements materially altering or embellishing the underlying works, the public domain paintings.

Within this limited framework, the Court finds no probative similarities between the parties' images. Plaintiff readily concedes the only similarity between the two sets of reproductions is that "both are exact reproductions of public domain works of art." [54] Because, by definition, public domain works are not subjects of copyright, this cannot serve as the requisite similarity for copyright infringement. Even if Bridgeman had a copyright in the one element distinguishable from the underlying works (i.e., the color bars plaintiff attaches to its images), there would be no similarity because Corel's images do not include this feature.

When, as here, the only similarity between two works is with respect to non-copyrightable elements, summary judgment is appropriate.[55]

### *The Canada and United Kingdom Infringement Claims*

■ The alleged copyright infringements which occurred outside of the United States are not actionable under the Copyright Act, as the Act has no extraterritorial operation.[56] To the extent such claims arise under the laws of Canada and the United Kingdom, the Court lacks jurisdiction to decide them for the reasons discussed below in Section IV.

**48.** *Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 746–47 (2d Cir.1998).

**49.** *Repp v. Webber*, 132 F.3d at 889 (citing *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 140 (2d Cir.1992)). Proof of copying is generally adduced in this manner because often, as here, there is no direct evidence of copying.

**50.** Plaintiff initially asked the Court to infer access on the theory that Bridgeman had the only images of the works in question and that the works themselves could not have been photographed anew. Ultimately, however, Bridgeman admitted that it is not the only possible source for 119 of the 120 images. But it still asks that copying of all 120 might be inferred on the basis that the 120th image must have been copied.

**51.** *See Streetwise*, at 746 (noting that at this stage of inquiry, "similarity" relates not only to the copyrightable elements, but to the entire work).

**52.** *See* INTERNATIONAL COPYRIGHT LAW, § 2[3][b] at UK–28.

**53.** *Feist Publications*, 499 U.S. at 361, 111 S.Ct. 1282; *Streetwise*, at 746.

**54.** Pl.Mem. at 27. *See also* Eichel Dep. at 165.

**55.** *Arica Institute, Inc. v. Palmer*, 970 F.2d 1067, 1072 (2d Cir.1992) (citing *Warner Bros. Inc. v. Am. Broadcasting Cos.*, 720 F.2d 231, 240 (2d Cir.1983)).

**56.** *See* 4 NIMMER § 17.02 at 17–20; *accord, Subafilms, Ltd. v. MGM–Pathe Communications Co.*, 24 F.3d 1088 (9th Cir.), *cert. denied*, 513 U.S. 1001, 115 S.Ct. 512, 130 L.Ed.2d 419 (1994); *Filmvideo Releasing Corp. v. Hastings*, 668 F.2d 91 (2d Cir.1981); *Foster v. WNYC–TV*, 1989 WL 146277, *2 (S.D.N.Y.1989).

## III. Lanham Act Claim

■ The amended complaint next claimed that Corel violated Section 43(a) of the Lanham Act[57] because it has falsely described the origin of the images on its CD–ROMs and falsely suggested that Corel's product is connected or associated with or sponsored by Bridgeman or the museums it represents.[58] The argument was that the public has come to associate the Mona Lisa and other works, images of which are in Bridgeman's collection of reproductions, with Bridgeman or its client museums. *Ergo,* the sale of Corel's reproductions of the Mona Lisa and other works, according to Bridgeman, is associated with Bridgeman or its clients.

Section 43(a) comprises two prongs, the first of which[59] protects against infringement of unregistered trademarks and the second of which[60] prohibits false advertising.[61] Although the amended complaint evidently sought to allege both theories, Bridgeman has focused only on the first and thus has abandoned the second. And there are fundamental problems with Bridgeman's argument.

■ To begin with, Bridgeman's claim, even at the outset, in substantial measure was that the copying of its images violates the Lanham Act because its images are associated with it or its clients. To the extent that the claim rests on copying *vel non,* it is without merit. The Copyright Act is the only source of protection against the copying, without more, of copyrightable material.[62] But this proposition is not necessarily the end of plaintiff's original claim. The Court assumes, without deciding, that one might make a trademark or comparable use of a copyrighted or copyrightable image which itself serves as a trademark and thus entitle the copyright owner to relief under the Lanham Act for reasons going beyond the alleged copying itself. Such an image might be used, for example, in a manner that would engender confusion as to the copyright holder's association with or sponsorship of a product on which the image appeared.[63] But Bridgeman has made out no such claim here.

First of all, Bridgeman's answers to defendant's interrogatories substantially narrowed its claim. It specifically asserted that the only basis for its claims of unfair competition and deceptive trade practices was Corel's alleged copying of Bridgeman's images and the sales of the copies at lower prices.[64] And even if Bridgeman had not so limited its Lanham Act claim, the claim would have other problems.

For one thing, Bridgeman has conceded that the images in question are not trademarks or service marks of its products or those of its client museums.[65] In other words, it has admitted formally that the images in question do not serve to identify the source of Bridgeman's products or services. That alone is fatal to its Section 43(a) claim.[66]

Next, Bridgeman has failed to allege or offer any evidence of any trademark use by

---

**57.** 15 U.S.C. § 1125(a) (1988). Plaintiff has conceded the insufficiency of its claim under Section 32 of the Act. (Pl.12(b)(6) Mem. 24; Pl.Mem. 27)

**58.** Am.Cpt. ¶¶ 26–29.

**59.** 15 U.S.C. § 1125(a)(1)(A).

**60.** *Id.* § 1125(a)(1)(B).

**61.** 4 J. Thomas McCarthy, McCarthy on Trademarks § 27:9 (1998) (hereinafter McCarthy on Trademarks).

**62.** *Kregos v. Associated Press,* 3 F.3d 656, 666 (2d Cir.1993) (state cause of action preempted by federal copyright laws when state law right asserted is equivalent to rights protected under federal law), *cert. denied,* 510 U.S. 1112, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994); *G. Ricordi & Co. v. Haendler,* 194 F.2d 914 (2d Cir.1952); *see Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 232–33, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); *see Fabrication Enterprises, Inc. v. Hygenic Corp.,* 64 F.3d 53, 58 n. 4, (2d Cir.1995) (Lanham Act does not protect invention, which is the province of patent law); *Duraco Products, Inc. v. Joy Plastic Enterprises, Ltd.,* 40 F.3d 1431 (3d Cir.1994) (same); *Stormy Clime, Ltd. v. ProGroup, Inc.,* 809 F.2d 971, 977–78 (2d Cir.1987) (same).

**63.** *See Mulberry Thai Silks, Inc. v. K & K Neckwear, Inc.,* 897 F.Supp. 789, 792 (S.D.N.Y.1995).

**64.** Fritz Decl.Ex. H, responses to interrogatory nos. 37–38.

**65.** Fritz Decl.Ex. H, response to interrogatory no. 39.

**66.** *See Hughes v. Design Look, Inc.,* 693 F.Supp. 1500, 1505–06 (S.D.N.Y.1988) (estate of Andy Warhol not entitled to Section 43(a) protection for Warhol paintings because the paintings were

Corel of any of the images at issue. That is to say, there is no suggestion that Corel uses any of the images in a manner intended or likely to be taken as an identifier of the source of Corel's product.[67] Bridgeman asserts only that 120 of the 700 images on Corel's CD–ROM are of works of which Bridgeman also distributes images. Given Corel's lack of any trademark use of any of the images, there simply is no possibility of confusion.

Finally, if anything is associated with Bridgeman or its client museums, it is the underlying works of art, not whatever subtle differences may exist between those works and Bridgeman's images of them. Bridgeman is no more able to appropriate to itself exclusive rights to the use of the underlying public domain works via the law of trademarks than it is via the law of copyright.[68]

### IV. Jurisdiction

Having disposed of plaintiff's Copyright and Lanham Act claims the Court must determine whether it has the power to decide plaintiff's remaining claims and, if so, whether it should exercise that power.

### Judicial Power

1. Canada and United Kingdom Infringements

■ There is no independent basis of federal subject matter jurisdiction over plain-

tiff's claims of copyright infringement in Canada and the United Kingdom. While Section 1338(a) of the Judicial Code[69] confers jurisdiction over matters relating to copyrights and trademarks, it does so only with respect to claims that arise "under any Act of Congress."[70] Obviously, then, Section 1338(a) does not create jurisdiction for Bridgeman's claim under the laws of Canada and the United Kingdom. Nor can Bridgeman rely on the Berne Convention and its implementation vehicle, the BCIA. The Berne Convention is a treaty, not an act of Congress. Moreover, the Convention is not self-executing.[71]

Section 1331[72] similarly is unavailing as a source of jurisdiction for these claims. Although federal question jurisdiction includes claims arising under treaties, the Berne Convention is not self-executing. In consequence, Bridgeman has no claim arising under the Convention within the meaning of Section 1331.

Absent as well is jurisdiction based on diversity of citizenship under Section 1332.[73] Corel is a citizen of Canada; Bridgeman a subject of the United Kingdom. "As the pleadings clearly show, all parties are aliens, and neither the constitutional nor statutory

---

not used as trademarks); 1 McCarthy on Trademarks § 3:4, at 3–12 to 3–13.

67. The amended complaint alleges only that Corel sells CD–ROMs under the title "Corel Professional Photos CD–ROM, Masters I–VII" and that the CD–ROMs permit purchasers to download images of the underlying public domain works. (Am.Cpt.preamble) There is no suggestion that any of the disputed images appears on the packaging or in advertising for the product.

68. See Kienzle v. Capital Cities/Am. Broadcasting Co., 774 F.Supp. 432, 438–39 (E.D.Mich.1991) (no Section 43(a) protection for matters in the public domain).

69. 28 U.S.C. § 1338(a) (1998).

70. Id.

71. See Itar–Tass, 153 F.3d at 90. The circuit court noted that the BCIA amended the Copyright Act to provide: "No right or interest in a work eligible for protection under this title may

be claimed by virtue of, or in reliance upon, the provisions of the Berne Convention, or the adherence of the United States thereto." 17 U.S.C. §§ 104(c). See also BCIA § 2(2) ("The obligations of the United States under the Berne Convention may be performed only pursuant to appropriate domestic law."); Section 3(a)(2) ("The provisions of the Berne Convention ... shall not be enforceable in any action brought pursuant to the provisions of the Berne Convention itself."); Section 3(b)(1) ("The provisions of the Berne Convention ... do not expand or reduce the right of any author of a work, whether claimed under Federal, State, or the common law ... to claim authorship of the work." See also 1 Nimmer § 1.12[A] at 1–106, 1–107 (noting that Congress declares in the BCIA that the Berne Convention is not self-executing); Quantitative Financial Software Ltd. v. Infinity Financial Technology, Inc., 1998 WL 427710 (S.D.N.Y. 1998).

72. 28 U.S.C. § 1331 (1998).

73. 28 U.S.C. § 1332 (1998).

grants of jurisdiction include such a suit." [74] That each company does business in New York is immaterial for citizenship and therefore jurisdictional purposes.[75]

### 2. Common Law Unfair Competition

■ Plaintiff asserts jurisdiction with regard to its common law unfair competition claims under 28 U.S.C. § 1338(b). Section 1338(b) confers jurisdiction over such claims "when joined with a substantial and related claim under the copyright . . . or trade-mark laws." [76] This jurisdictional base, however, is conditioned on a viable copyright or trademark claim arising under United States law.[77] Inasmuch as Bridgeman has no viable claims under the Copyright and Lanham Acts, jurisdiction over its unfair competition claims under Section 1338(b) fails.

### Discretionary Jurisdiction

■ The doctrine of supplemental jurisdiction, now largely codified in 28 U.S.C. § 1367,[78] gives federal courts, which have subject matter jurisdiction over federal claims, discretion to decide closely related claims over which there is no independent basis of federal jurisdiction. But once "all bases for federal jurisdiction have been elimi-nated from a case so that only pendant [sic] state claims remain, the federal court should ordinarily dismiss the state claims." [79] When, as here, the federal claim is dismissed early in the litigation process, "the presumption to decline jurisdiction is strong." [80]

### Conclusion

For the foregoing reasons, defendant's motion for summary judgment dismissing the complaint is granted. The Copyright Act and Lanham Act claims are dismissed on the merits and all other claims for lack of subject matter jurisdiction. Plaintiff's cross motion for partial summary judgment is denied.

SO ORDERED.

---

**74.** *Joseph Muller Corporation Zurich v. Societe Anonyme de Gerance et D'Armement*, 451 F.2d 727 (2d Cir.1971), *cert. denied*, 406 U.S. 906, 92 S.Ct. 1609, 31 L.Ed.2d 816 (1972); *Quantitative Financial Software Ltd.*, 1998 WL 427710; *Lloyds Bank PLC v. Norkin*, 817 F.Supp. 414 (S.D.N.Y.1993).

**75.** Irrelevant as well would be any contention that New York is the principal place of business in the United States. The worldwide principal place of business is determinative of citizenship. *Bailey v. Grand Trunk Lines New England*, 805 F.2d 1097, 1101 (2d Cir.1986), *cert. denied*, 484 U.S. 826, 108 S.Ct. 94, 98 L.Ed.2d 54 (1987).

**76.** 28 U.S.C. § 1338(b).

**77.** *Historical Truth Productions, Inc. v. Sony Pictures Entertainment, Inc.*, 1995 WL 693189, *14 (S.D.N.Y.1995); *Envirex Inc. v. FMC Corp.*, 1993 WL 572321, *16 n. 1 (E.D.Wis.1993), *aff'd*, 16 F.3d 420 (Fed.Cir.1993).

**78.** 28 U.S.C. § 1367 (1998).

**79.** *Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir.1988) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)); *Davis v. United Artists, Inc.*, 547 F.Supp. 722, 728 (S.D.N.Y.1982) (court may decline to hear pendant unfair competition claims under § 1338(b) when copyright claim is dismissed).

**80.** *Bill v. Casarona*, 1996 WL 389304, *4 (S.D.N.Y.1996) (citing *Historical Truth Productions, Inc. v. Sony Pictures Entertainment, Inc.*, 1995 WL 693189 (S.D.N.Y.1995)); *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 920 F.Supp. 508 (S.D.N.Y.1996), *vacated on other grounds*, 105 F.3d 99 (2d Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 265, 139 L.Ed.2d 191 (1997); *Davis v. United Artists, Inc.*, 547 F.Supp. at 728.