[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13233
Non-Argument Calendar
_____

D.C. Docket No. 4:17-cv-00181-MW-CAS


MITCHELL A. POHL,
DDS,

Plaintiff-Appellant,

versus

MH SUB I LLC,
d.b.a. OFFICITE,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(May 1, 2019)

Before TJOFLAT, JORDAN and HULL, Circuit Judges.

PER CURIAM:

Plaintiff Mitchell A. Pohl, D.D.S., appeals the district court's grant of summary judgment to Defendant MH Sub I LLC, d.b.a. Officite ("Officite") on his copyright infringement claim. Without permission, Defendant Officite used and published photographs that were taken from Plaintiff Dr. Pohl's website. The question on appeal is whether the record evidence created material issues of fact that preclude judgment for Defendant Officite at this summary judgment stage. After careful review of the record and the parties' briefs, we conclude that the record creates genuine issues of material fact as to whether Dr. Pohl's photographs were sufficiently original to warrant copyright protection. We thus reverse the judgment and remand the case to the district court for further proceedings consistent with this opinion.

## I.  FACTUAL BACKGROUND

### A.    Dr. Pohl's Photographs

We set forth the record facts in the light most favorable to Dr. Pohl, the non-movant. Blue v. Lopez, 901 F.3d 1352, 1357 (11th Cir. 2018). Dr. Pohl is a practicing dentist in Boca Raton, Florida. He devotes a substantial portion of his practice to cosmetic dentistry. This includes the application of cosmetic veneers.

In 2000, Dr. Pohl started taking "before and after" photographs of his patients to depict his dentistry services. With his patients' authorization, he uses the before and after photographs on his website to showcase his dentistry skills.

2

At issue in this litigation are the before and after photographs that Dr. Pohl took of his patient, Belinda, in 2004.  Originally from Alaska, Belinda sought out Dr. Pohl's cosmetic dentistry services to fix her smile.  The "before" photograph is a close-up of Belinda's teeth, lips, and a small area surrounding her mouth. Belinda appears to be somewhat smiling in the picture, revealing that her teeth were stained and crooked before Dr. Pohl corrected them.

The "after" photograph is another close-up of Belinda's mouth, showing her teeth, lips and a small area around her mouth.  In the "after" photograph, Belinda's smile is more pronounced, displaying her bright white and uniformly shaped teeth. Upon seeing the results of Dr. Pohl's dental work, Belinda "couldn't stop looking in the mirror," and wrote him a letter of appreciation.

In taking these pictures, Dr. Pohl was solely responsible for choosing the camera, lighting, photo angle, and positioning of Belinda.  In fact, Dr. Pohl always photographs his cosmetic dentistry patients himself because he is "anal retentive" and cosmetic cases are critical to him.  He does, however, allow his assistants to take the before and after photographs in his orthodontic cases.

As to Belinda's photographs specifically, Dr. Pohl took the "before" picture with Belinda sitting in a dental chair and the "after" picture with her standing in front of a screen.  Prior to taking the photographs, he instructed Belinda to "smile," "look at the camera," and possibly positioned her head in a certain manner.  Each

3

picture showcased Belinda's smile and teeth.  In order to capture that shot, Dr. Pohl moved closer to Belinda and zoomed in with the camera lens.  Dr. Pohl published Belinda's before and after photographs on his website in 2005.

## B.    Copyright Application

In November 2005, Dr. Pohl personally prepared and applied for a copyright covering the photographs he posted on his website.  As deposit materials, Dr. Pohl submitted a CD or DVD containing his entire "Boca Raton Cosmetic Dentist" website, www.bocaratoncosmeticdentist.com, as it was published on the internet in 2005.  According to Dr. Pohl, the deposited materials included the 2004 before and after photographs of Belinda.

In his application, Dr. Pohl claimed a copyright in his practice's "Text and Photographs" and "Website" therein and stated that the website was completed in 2000 and first published on November 20, 2000.  The United States Register of Copyrights registered Dr. Pohl's copyright in his website with an effective date of November 28, 2005.

In January 2014, Dr. Pohl, through an attorney, filed a supplementary registration because he realized that his claim to the "Text" on his website was incorrect.  He had intended to copyright only the website's photographs.  The Register of Copyrights issued a supplementary registration, which copyrighted the photographs on Dr. Pohl's website.

4

**C.      Defendant Officite Allegedly Uses the Photographs**

In April 2016, Dr. Pohl performed a Google reverse-image search of the before and after photographs of Belinda.  The search revealed that Belinda's photographs were published on at least seven different dentists' websites without Dr. Pohl's permission.  To record this, Dr. Pohl took contemporaneous screenshots of the websites.  The seven websites were designed by Defendant Officite.

Dr. Pohl reported this unauthorized use to his attorney.  The attorney also visited the same websites and documented that each website had published Belinda's before and after photographs.  As a result, in May 2016, Dr. Pohl sent a letter to Defendant Officite demanding that it cease and desist using his photographs and compensate him for using them without his authorization.  By June 2016, the photographs had been removed from the seven websites.  Defendant Officite did not otherwise respond to Dr. Pohl's letter.

## II.  PROCEDURAL HISTORY

**A.      Defendant Dr. Pohl's Complaint Against Officite**

In April 2017, Dr. Pohl sued Officite for direct copyright infringement, under 17 U.S.C. § 501, alleging that Officite had created websites for its clients that reproduced and publicly displayed his copyrighted before and after photographs of Belinda without his permission.  As relief, Dr. Pohl not only sought

actual and statutory damages, but also asked the district court to permanently enjoin Officite from further acts of infringement.

## B.    Summary Judgment Motions

After discovery, the parties filed cross-motions for summary judgment. Dr. Pohl moved for partial summary judgment with respect to Officite's liability for copyright infringement.  Officite moved for summary judgment, arguing that: (1) based on his copyright application, Dr. Pohl's 2005 copyright covered only his website as it appeared in 2000, which did not include the 2004 photographs of Belinda; (2) his photographs of Belinda were not copyrightable because they lacked originality; (3) Belinda's photographs never appeared on the seven websites in question and Officite never possessed them; and (4) Dr. Pohl was not entitled to damages.

## C.    District Court's Summary Judgment Order

The district court granted summary judgment in favor of Officite.  Taking Officite's arguments in turn, the district court first denied the motion as to Officite's claim that Belinda's photographs were not protected by Dr. Pohl's copyright, concluding that there was a fact issue as to whether the relevant pictures were among the materials Dr. Pohl deposited with his copyright application.[1]

---

[1]On appeal, Officite asks us to affirm the district court's summary judgment order on the independent basis that Dr. Pohl's copyright registration does not claim Belinda's photographs.

Second, the district court determined that Dr. Pohl's before and after photographs of Belinda were not copyrightable because no reasonable jury could find the photos were sufficiently creative or original to warrant copyright protection.  Although Dr. Pohl had testified that he was responsible for selecting the camera, posing Belinda, and determining the lighting and photo angle before taking the photographs, the district court found that his described process for taking the pictures involved no "creative spark."  In so ruling, the district court emphasized that (1) the pictures served the purely utilitarian purpose of advertising Dr. Pohl's services, (2) the actions Dr. Pohl took in taking the pictures involved "the most rudimentary and basic task[s] for photographers since the era of the daguerreotype," and (3) the entire photography process took only five minutes. The district court therefore concluded that "[t]here is nothing remotely creative about taking close-up photographs of teeth" and "no pair of eyes on a reasonable jury [could] find any modicum of creativity or originality in these photographs." Because the photographs did not warrant copyright protection, the district court determined that Dr. Pohl's copyright claim lacked merit.  This is Dr. Pohl's appeal.

### III.  STANDARD OF REVIEW

---

We cannot affirm on that basis because we agree with the district court that genuine issues of material fact preclude summary judgment on that argument.

7

We review an order granting summary judgment de novo.  Blue, 901 F.3d at 1357.  Because Officite moved for summary judgment, it can prevail only if it "shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  On review, we examine the record as a whole, which includes "depositions, documents, [and] affidavits or declarations."  Fed. R. Civ. P. 56(c).  And we must construe the evidence in the light most favorable to Dr. Pohl and draw every justifiable inference in his favor.  See Tolan v. Cotton, 572 U.S. 650, 651, 134 S. Ct. 1861, 1863 (2014) (per curiam); Blue, 901 F.3d at 1357.

## IV.  DISCUSSION

### A.    Copyright Infringement

To establish a claim of copyright infringement, a plaintiff must show two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361, 111 S. Ct. 1282, 1296 (1991).  To satisfy Feist's first prong, a plaintiff must prove that the work is original and that he complied with applicable statutory formalities for copyrights.  Bateman v. Mnemonics, Inc., 79 F.3d 1532, 1541 (11th Cir. 1996).  A certificate of registration "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate."  17 U.S.C. § 410(c).  "Once a plaintiff produces a certificate of

registration, the burden shifts to the defendant to establish that the work in which the copyright is claimed is unprotectable (for lack of originality)." Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1233 (11th Cir. 2010) (internal quotation marks omitted); see also Burrow-Giles Lithographic Co. v. Sarony, 111 U.S. 53, 58-60, 4 S. Ct. 279, 281-82 (1884) (explaining "the constitution is broad enough to cover an act authorizing copyright of photographs, so far as they are representatives of original intellectual conceptions of the author").

In the instant lawsuit, Dr. Pohl claimed that Officite infringed on his copyright in the before and after photographs of Belinda. He produced a certificate of copyright registration granted in November 2005, covering the photographs posted on his website. Thus, he benefits from a rebuttable presumption that his copyright is valid.

To satisfy Feist's second prong, a plaintiff must establish, as a factual matter, that the alleged infringer actually copied plaintiff's copyrighted material. Bateman, 79 F.3d at 1541. "Factual proof of copying, however, is only an element in satisfying the second prong of Feist." Id. "[T]he plaintiff must also respond to any proof advanced by the defendant that the portion of the copyrighted work actually taken does not satisfy the constitutional requirement of originality." Id. at 1542. Indeed, "[t]he sine qua non of copyright is originality." Feist, 499 U.S. at 345, 111 S. Ct. at 1287. Whether a work is sufficiently original to warrant

9

copyright protection is a question of fact.  Home Legend, LLC v. Mannington Mills, Inc., 784 F.3d 1404, 1409 (11th Cir. 2015).

The Supreme Court has cautioned that it is not difficult to satisfy the originality requirement for purposes of copyright protection.  Feist, 499 U.S. at 345, 358, 111 S. Ct. at 1287, 1294.  An author need only independently create the work (as opposed to copy it from other works) and imbue it with "some minimal degree of creativity."  Id. at 345, 111 S. Ct. at 1287.  "To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice."  Id.  And "[t]he vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be."  Id. (internal quotation marks omitted).

This is true of photographs.  "Federal courts have historically applied a generous standard of originality in evaluating photographic works for copyright protection."  Latimer, 601 F.3d at 1234.  Given the expansive standard of originality for photographs, the "vast majority" of photographs qualify for copyright protection, "by showing that the author exercised some personal choice in the rendition, timing, or creation of the subject matter involved in the photograph."  1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 2A.08[E][3][b], at 2A–109 (2018) ("Nimmer on Copyright").

10

As to rendition, elements of originality in a photograph may include "posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved." Latimer, 601 F.3d at 1234 (internal quotation marks omitted). This Court has explained that, "[e]xcept for a limited class of photographs that can be characterized as 'slavish copies,' courts have recognized that most photographs contain at least some originality in their rendition of the subject-matter." Id.

For example, this Court has noted that a photograph of a sculptural artwork—the Bird Girl statue in Savannah's Bonaventure Cemetery—was sufficiently original for copyright protection, as it involved minimal creativity in the "selection of lighting, shading, timing, angle, and film" for the picture. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1215 (11th Cir. 2000). Likewise, we have recognized that photographs of motorcycles taken for advertising materials were copyrightable where the photographer "made all decisions regarding lighting, appropriate camera equipment and lens, camera settings and use of the white background, which was consistent with the industry practice he had noted in studying other advertising photographs." Latimer, 601 F.3d at 1230, 1233-35.

And in Home Legend, this Court held that a digital photograph depicting 15 stained and time-work maple planks, which was created as a flooring design, was sufficiently original because the creators imagined what raw wood might look like

11

after years of wear, and then added marks to the wood planks and digital images to render the design. Home Legend, 784 F.3d at 1407, 1410. That was sufficiently creative to "hurdle the low bar of copyrightable originality." Id. at 1410. Our decisions teach that the elements that combine to satisfy Feist's minimal "creative spark" standard will vary depending on the photographer's creative choices.

That said, "[t]he measure of originality becomes more difficult to gauge as one moves from sublime expression to simple reproduction." SHL Imaging, Inc. v. Artisan House, Inc., 117 F. Supp. 2d 301, 310-11 (S.D.N.Y. 2000) (holding that photographs of mirrored picture frames taken for advertisements were sufficiently original based on the totality of the precise lighting selection, angle of the camera, lens and filter selection).[2] In rare cases, some federal courts have held that a photograph cannot satisfy the low bar to originality where "the author's personal choices as manifested in the photograph—the basis of any originality—are found to be so banal and unthinking that they do not qualify as instances of originality in rendition, timing, subject matter, and the like." Nimmer on Copyright § 2A.08[E][3][b][iii], at 2A-112; see, e.g., Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc., 528 F.3d 1258, 1265 (10th Cir. 2008) ("[T]he facts in this case unambiguously show that Meshwerks did not make any decisions regarding

_____

[2]We have recognized that the United States District Court for the Southern District of New York has developed substantial expertise in copyright law as a result of the large number of copyright cases litigated in that district each year. Latimer, 601 F.3d at 1234 n.7.

12

lighting, shading, the background in front of which a vehicle would be posed, the angle at which to pose it, or the like—in short, its models reflect none of the decisions that can make depictions of things or facts in the world, whether Oscar Wilde or a Toyota Camry, new expressions subject to copyright protection.").

**B.    Genuine Issues of Fact as to the Originality of Photographs**

With this legal background in mind and given the overall record, we conclude that the district court erred in granting summary judgment to Defendant Officite.  In holding that Dr. Pohl's photographs were not sufficiently creative or original to receive copyright protection, the district court failed to view the evidence at summary judgment in the light most favorable to Dr. Pohl with respect to the facts of this case.  By failing to credit evidence that contradicted some of its factual conclusions, the court improperly "weigh[ed] the evidence" and resolved disputed issues in favor of Defendant Officite.  See Anderson, 477 U.S. at 249, 106 S. Ct. at 2511.

First, the district court concluded that Dr. Pohl's process of taking the photographs of Belinda involved no "creative spark."  The district court drew this assessment from Dr. Pohl's statements in his deposition that (1) he did not remember whether Belinda was sitting or standing when he photographed her or what type of camera he used, (2) he posed Belinda by telling her to look at the camera and smile, (3) the district court's own observation that there is no creativity

in having sufficient lighting in a room where Dr. Pohl took his photographs, and (4) its conclusion that Dr. Pohl's selection of photo angle was basic and rudimentary.

In his deposition, however, Dr. Pohl testified that he took Belinda's "before" picture with her sitting in a dentist chair and her "after" picture with her standing in front of a photography screen. In his affidavit, Dr. Pohl also said that he was solely responsible for choosing what type of camera to use to take Belinda's pictures and for positioning her. In staging the picture, Dr. Pohl instructed Belinda to look directly at the camera, instead of an angled or profile perspective. He also chose to take the pictures close-up, instead of capturing Belinda's full face. And he chose to photograph Belinda smiling, instead of, for example, retracting her lips and photographing her teeth and gums only.

Although the district court believed Dr. Pohl's photo angle involved "the most rudimentary and basic task for photographers since the era of the daguerreotype," the Supreme Court has made plain that "[o]riginality does not signify novelty." See Feist, 499 U.S. at 345, 111 S. Ct. at 1287. While Dr. Pohl may not have carefully staged Belinda and adjusted the lighting as a professional photographer might have, that is not the standard. The photographs need only possess some minimal degree of creativity. Id. And it cannot be said that Dr. Pohl's pictures are "slavish copies" of an underlying work. See Latimer, 601

14

F.3d at 1234; cf. Bridgeman Art Libr., Ltd. v. Corel Corp., 25 F. Supp. 2d 421, 426-27 (S.D.N.Y. 1998) (finding no originality in transparencies of paintings where the goal was to reproduce those works exactly and thus to minimize or eliminate any individual expression).

Furthermore, Dr. Pohl selected the timing and subject matter of the photographs—that is, he took the pictures before and after he completed his cosmetic dentistry procedure on Belinda.  And in cosmetic dentistry cases, like Belinda's, Dr. Pohl always takes the patient photographs himself, instead of having his staff take them, because he is extremely picky and the cosmetic dentistry cases are critical to him.  Viewed in the light most favorable to Dr. Pohl, it is reasonable to infer from this testimony that there was a precise manner in which Dr. Pohl wanted Belinda's before and after photographs to come out in order to showcase his dentistry skills.  Dr. Pohl had something in mind when he took the pictures. That the photographs were intended solely for advertisement has no bearing on their protectability.  See Bleistein v. Donaldson Lithographing Co., 188 U.S. 239, 251, 23 S. Ct. 298, 300 (1903) ("A picture is none the less a picture, and none the less a subject of copyright, that it is used for an advertisement.").  The Supreme Court has long held that "the special adaptation of [] pictures to [] advertisement . . . does not prevent a copyright.  That may be a circumstance for the jury to consider in determining the extent of [the parties'] rights, but it is not a bar."  Id. ("It would

15

be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of pictorial illustrations, outside of the narrowest and most obvious limits.").

In short, the overall record evidence created genuine issues of material fact as to whether Dr. Pohl made sufficiently creative decisions in taking Belinda's photographs, "no matter how crude, humble or obvious" they may have been. See Feist, 499 U.S. at 345, 111 S. Ct. at 1287.

In holding otherwise, the district court primarily relied on Oriental Art Printing, Inc. v. Goldstar Printing Corp., 175 F. Supp. 2d 542, 546 (S.D.N.Y. 2001), where the district court held that photographs of Chinese food dishes taken for a take-out menu lacked the requisite originality to be copyrightable. A key to that holding, however, was that the "plaintiffs fail[ed] to describe how the photographs were taken, or how they were incorporated into the copyrighted design as a whole. . . . While [the plaintiff's president] state[d] that he worked with a photographer on the 'lighting' and 'angles,' he provide[d] no description of either the lighting or angles employed, or any desired expression." Id. at 547.

This case is not like Oriental Art. Here, Dr. Pohl described how the relevant photographs were taken, including his choice of lighting, angles, and desired expression—Belinda's smile. Nor does this case involve purely descriptive photographs of products, like the other non-binding cases mentioned by the district

16

court.  Nevertheless, our binding precedent makes clear that even descriptive photographs of products, like a flooring design, can be sufficiently original to merit copyright protection in any event.  See Home Legend, 784 F.3d at 1407, 1410.

## V.  CONCLUSION

For the foregoing reasons, we must reverse the district court's grant of summary judgment in favor of Defendant Officite and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**